IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LARRY J. BROWN,

                Plaintiff,                OPINION AND ORDER

    v.                                                20-cv-337-wmc

DOUG BELLILE, DANIEL KATTENBRAKER,
JOHN AND JANE DOE "SPECIAL NEEDS
COMMITTEE MEMBERS," LAURA THOMAS,
LISA POUILLIE, SARA DONOVAN,
JOSEPH SCHMELZLE, and DANIEL PARK,

                Defendants.

---

*Pro se* plaintiff Larry J. Brown has been granted leave to proceed under 42 U.S.C. § 1983 against certain staff members at the Sand Ridge Secure Treatment Center ("Sand Ridge") on Fourteenth Amendment medical deliberate indifference claims. (Dkt. #21.) Specifically, Brown alleges that Sand Ridge staff are ignoring his ongoing trouble swallowing and esophageal pain, which worsens because staff leave him too little time to eat, as well as refusing to provide blankets that do not irritate his skin condition. Before the court at this time is Brown's (1) motion for reconsideration of the court's denial of injunctive relief (dkt. #27); and (2) his renewed motion for assistance in recruiting counsel (dkt. #23). For the following reasons, the court will deny Brown's renewed motion for counsel, but it will order defendants to respond to Brown's renewed request for injunctive relief.[1]

---

[1] Brown also asks the court to: (1) clarify how to identify his Doe defendants; and (2) explain its informal service agreement with the Wisconsin Department of Justice. (Dkt. #27 at 3.) First, the magistrate judge will explain at the preliminary pretrial conference how to use discovery requests to identify the Doe defendants, along with the procedure to amend the complaint to identify them by name. Second, the court sent copies of Brown's complaint and its screening order to the

## I. Renewed Motion for Preliminary Injunctive Relief

To begin, Brown seeks to renew his request for preliminary injunctive relief, which the court denied without prejudice in its screening order. (Dkt. #21.) As before, Brown argues that since he is civilly confined at Sand Ridge under Wis. Stat. Ch. 980, the court should preliminarily order defendants to provide him the same items and accommodations he received while criminally incarcerated at Columbia Correctional Institution to help relieve his gastroesophageal and dermatologic symptoms. Specifically, Brown requests additional time to eat smaller, more frequent meals in his room and at no charge: cotton blankets, a nighttime snack, and two extra pillows to elevate his head at night. To succeed on a motion for preliminary injunction, plaintiff must show: (1) a likelihood of success on the merits of his case; (2) a lack of an adequate remedy at law; and (3) an irreparable harm that will result if the injunction is not granted. *See Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007).

First, Brown argues the court's decision to allow him to proceed on deliberate indifference claims against defendants is inconsistent with its denial of his request for preliminary injunctive relief. (Dkt. #27 at 1.) However, as noted in the court's screening order, these are two different inquiries: a plaintiff's complaint may cross the *low* threshold set at screening to state a claim, but fall well short of the much more *demanding* analysis to obtain injunctive relief. (Dkt. #21 at 17.) Indeed, the Seventh Circuit has emphasized that granting a preliminary injunction is "an exercise of a very far-reaching power, never to

---

Wisconsin Department of Justice, which accepted service and filed an answer on behalf of the named defendants. (Dkt. ##25, 28). Accordingly, Brown does *not* need to serve these defendants on his own.

be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 389 (7th Cir. 1984).

Second, as he did in his original motion, Brown emphasizes that he lacks the means to purchase *outright* the items he allegedly needs. In support, Brown details his income and expenses, and contends that having declined to participate in treatment programming, Sand Ridge discriminatorily limits his work hours, and thus his ability to earn more money. Brown's income is small, but while he could request a loan under Sand Ridge Policy 648 to purchase certain items and services to be repaid in installments as funds become available (dkt. #1-5 at 11-12),[2] Brown again argues that this policy lacks "the weight or force of law" because it is "unpromulgated" (dkt. #27 at 3).

Obviously, Brown claims that Sand Ridge should not be allowed to charge him for items that he allegedly received for free while in prison to help relieve certain medical symptoms. However, Brown has not established that having to incur some institutional debt to be repaid in installments would constitute *irreparable* harm, as opposed to a hardship, until the merits of his claims are addressed by the court. To the contrary, he need only incur a monetary debt in the meantime, and improperly incurred expenses are recoverable if proven. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (compensatory damages under § 1983 include out-of-pocket loss and other monetary harms). Furthermore, for the reasons given in the court's screening order, Brown is not currently proceeding on a claim that Policy 648 is *per se* unconstitutional (dkt. #21 at 7

---

[2] Brown does not claim to qualify, but under Policy 359, indigent patients at Sand Ridge may request an allowance for such purchases. (Dkt. #1-5 at 7.)

n.5.), undermining *any* chance of success on the merits of that claim, as well as the court's authority to order injunctive relief related to this policy.[3]

That said, Brown's new assertions that he has been suffering from "serious pain" every day since 2017, yet defendants "feel that they do not have to [do] anything about" his health, *may* change the balance of interests, at least as to irreparable harm. (Dkt. #27 at 2.) As noted, Brown has an income, albeit a limited one, and while he does not want to request a loan, he does not claim that defendants have denied him access to the canteen, nor a loan or an allowance to purchase *items* including pillows, blankets, and snacks.[4] However, Brown cannot purchase the *accommodations* he alleges are also needs. (Dkt. ##1 at 1, 3 at 5.) Because Brown's allegedly ongoing and untreated gastroesophageal pain may be made worse as a direct result of defendants' alleged failure to accommodate his need to eat smaller, more frequent meals at a slower pace, defendants will be required to inform the court within 14 days of this order as to the adequacy of Brown's current medical treatments for his claimed ongoing stomach and throat pain, his meal schedule, and what consideration, if any, his medical condition has been given in determining that schedule.

---

[3] Of course, Brown is not precluded from filing an amended complaint to clarify the basis of his allegations that Policy 648 is unpromulgated, or that defendants lack authority to institute such a policy, but the relative merit of either claim is unlikely to change the balance of interests precluding preliminary relief. *Cf. Poole v. Isaacs*, 703 F.3d 1024, 1026-27 (7th Cir. 2012) (the imposition of a modest fee for medical services, standing alone, does not violate the constitution); *French-Smith v. David*, No. CIV. 09CV148DRH, 2009 WL 3066631, at *3 (S.D. Ill. Sept. 21, 2009) ("Courts have consistently held that a co-payment plan is not unconstitutional") (collecting cases); *Martin v. Debruyn*, 880 F. Supp. 610, 615 (N.D. Ind. 1995), *aff'd* 116 F.3d 1482 (7th Cir. 1997) (a state is not forbidden from requiring that an inmate pay for his medical treatment to the extent he is able to do so, as he would have to do were he not deprived of his liberty).

[4] Moreover, as noted in the screening order, Brown apparently has a wedge he can use to raise the head of his bed (dkt. ##1-4, 1-6), and is permitted until curfew to keep and eat two pieces of fruit in his room.

4

Once defendants have responded, the court will determine whether to proceed on plaintiff's renewed motion for preliminary relief.

## II. Renewed Motion for Assistance in Recruiting Counsel

As for his renewed motion for assistance in recruiting counsel, Brown states that: (1) his ability to work on this case is restricted while Sand Ridge is on lockdown due to employees testing positive for Covid-19; (2) he suffers from mental health disorders that make it difficult for him to concentrate; (3) he has difficulty navigating the complex medical terminology and issues in this case; and (4) he will need an expert to help present and prove his claims. (Dkt. #23.) Brown alternatively asks the court to grant him leave to appeal immediately from any denial of his renewed request for assistance. (Dkt. #23 at 2.) For the following reasons, the court will deny his renewed motion.

As an initial matter, the court notes that a *pro se* litigant does not have a right to counsel in a civil case. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). Ideally, every deserving litigant would be represented by a lawyer, but the unfortunate reality is that the *pro se* plaintiffs who file lawsuits in this federal court vastly outnumber the lawyers who are willing, able, and qualified to provide representation. As a result, this court is limited to helping *pro se* litigants recruit a lawyer to represent them. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007).

A party who wants the court's help must meet certain requirements. *Santiago v. Walls*, 599 F.3d 749, 760-61 (7th Cir. 2010). In considering any request for counsel, much less a renewed request, this court must find that the plaintiff (1) made reasonable efforts to find a lawyer on his own and was unsuccessful *or* (2) was prevented from making

such efforts. *Jackson v. County of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992). This court generally requires a party seeking recruitment of counsel to provide specific evidence to support that representation, such as (1) letters from three attorneys declining to represent him, or (2) a declaration, signed under penalty of perjury, attesting to the names of the attorneys that have not responded to his specific requests for representation. *See, e.g., Johnson v. Dunahay*, no. 17-cv-941-wmc, 2020 WL 4053972, at *9 (W.D. Wis. July 20, 2020). Brown admits that he has not tried to find a lawyer, but explains that he cannot afford to write to law firms and notes that due to the Covid-19 pandemic, his access to the computer lab is limited and, in any event, he fears contracting the coronavirus there. (Dkt. #23 at 2.) Even assuming Brown has *no* means of writing and sending letters, there are other ways of contacting attorneys regarding possible representation, such as online or via telephone if he truly views online access to be too limited or unsafe. Because the court can neither conclude that Brown has made a reasonable effort to find a lawyer, nor is being *prevented* from doing so, his renewed motion for counsel could be denied on this basis alone.

Even if this threshold requirement had been met, however, the court would still deny Brown's motion. Assistance in recruiting counsel is appropriate only when the plaintiff also demonstrates that his case is one of those relatively few in which it appears from the record that the legal and factual difficulty exceeds his ability to prosecute it. *Pruitt*, 503 F.3d at 654-55. Obviously, this is a different question than merely whether a lawyer might do a better job. *Id*. Here, the court cannot conclude, at least at this still early stage of the lawsuit, that Brown is unable to represent himself or that it will boil down to issues too complex from him to handle. In particular, only screening has been completed

and discovery has not yet begun, meaning Brown's near-term obligations principally include: (1) participating in a telephonic preliminary pretrial conference; and (2) preparing and responding to discovery requests. Brown has personal knowledge of the alleged events underlying this case, and so far, his submissions indicate that he can complete the tasks at hand. Indeed, his filings are understandable and demonstrate a clear understanding of his medical history, conditions, and symptoms, as well as the factual and legal bases for his claims against defendants.

As for the lockdown procedures currently in place at Sand Ridge due to the Covid-19 pandemic, Brown generally asserts that while he cannot use the law library, he may use the computer lab for "a few hours," although he fears it is unsafe. (Dkt. #23 at 1.) Moreover, Brown does not specify exactly what legal resources or additional access is necessary for him to litigate his case at this stage. Even assuming Brown will eventually need greater or safer access, the pretrial schedule typically affords litigants several months before dispositive motions are due, especially if the issue of timing and access is raised with opposing counsel in advance of that hearing *and* raised as necessary with Magistrate Judge Crocker. Even then, if despite pursuing access to the law library or other legal resources diligently, Brown continues to believe he cannot meet the deadlines set forth in the pretrial schedule, he should attempt to work with defendants' counsel to get the access he needs to litigate this case. Finally, if those efforts are unsuccessful, Brown should request a reasonable extension with the court, which would likely be granted. In the meantime, although the court is sympathetic to the restrictions Brown faces during this challenging time, this need does not merit recruiting counsel for him at so early a stage in the lawsuit.

Brown is also concerned that he will need an expert to present and prove his medical indifference claims, but it is too early to tell this as well.  Such testimony is not always required, such as where a claim turns "on historical facts as opposed to medical evidence." *Redman v. Doehling*, 751 F. App'x 900, 905 (7th Cir. 2018) (citing *Pruitt*, 503 F.3d at 655-56).  Until this case progresses further, and the parties have presented their respective versions of events, the court cannot determine whether this case will ultimately turn on issues requiring medical expertise or will be resolved on evidence that can be obtained from plaintiff's medical records and his personal knowledge.

That said, Brown's mental health issues remain of concern, and it might become clear as this case progresses that the court's assistance in the recruitment of counsel *is* required.  The court will, again, deny this renewed request for counsel without prejudice to Brown renewing it at a later date should his circumstances change *and* should he be unable to find a lawyer to represent him despite reasonable efforts.  For now, Brown should participate in the preliminary pretrial conference when scheduled, and once the preliminary pretrial conference order is issued, he should carefully review the order's guidance about gathering any additional evidence that he thinks might be needed to prove his claims.

Lastly, Brown asks the court to grant him leave to appeal immediately from the denial of his motion for counsel.  However, a decision not to recruit counsel for an indigent plaintiff is not a final decision appealable under 28 U.S.C. § 1291, as it does not end the litigation on the merits.  *Randle v. Victor Welding Supply Co.*, 664 F.2d 1064, 1065-67 (7th Cir. 1981); *see also Barnes v. Black*, 544 F.3d 807, 810 (7th Cir. 2008) (the district court's

8

order denying a state prisoner's request for a lawyer to represent him in his personal injury lawsuit was nonfinal, and therefore nonappealable, as long as the personal injury case continued in the district court). Neither is it an appropriate order for appeal under 28 U.S.C. § 1292(b), which only authorizes a court to certify for immediate appeal an order that "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Given that the court must deny recruitment of counsel for Brown at this early stage, and especially before he has made a meaningful effort to do so on his own, there would appear to be no controlling issue to which there are substantial grounds for difference of opinion, nor any reason to believe that an immediate appeal will materially advance this case, so the court must also deny Brown's request to certify an interlocutory appeal on this issue.

ORDER

IT IS ORDERED that:

1) Plaintiff Larry J. Brown's renewed motion for assistance in recruiting counsel, or, in the alternative, to certify an interlocutory appeal (dkt. #23) is DENIED.

2) Defendants' response to plaintiff's request for injunctive relief (dkt. #27) as described above is due on or before **February 26, 2021**.

Entered this 12th day of February, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge