IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LARRY J. BROWN,

                Plaintiff,

v.

DOUG BELLILE, DANIEL KATTENBRAKER,
JOHN AND JANE DOE "SPECIAL NEEDS
COMMITTEE MEMBERS," LAURA THOMAS,
LISA POUILLIE, SARA DONOVAN,
JOSEPH SCHMELZLE, and DANIEL PARK,

                Defendants.

OPINION AND ORDER

20-cv-337-wmc

---

    Plaintiff Larry J. Brown is a patient at Sand Ridge Secure Treatment Center who, while still incarcerated at Columbia Correctional Institution, underwent fundoplication surgery in 2017 to ease GERD symptoms and to address a hernia.[1]

    In this lawsuit, Brown has been granted leave to proceed on deliberate indifference claims under § 1983 against various center staff under the Fourteenth Amendment arising out of:

(1) an ongoing refusal to provide Brown with cotton blankets, extra pillows, peppermints, and a nighttime snack, all free of charge;

(2) not making certain meal-related accommodations, such as providing additional time to eat in the cafeteria and affording him smaller, more frequent state-

---

[1] Fundoplication involves reinforcing the lower part of the esophagus to help prevent stomach acid from backing up into it. Since his surgery, Brown has reported having trouble swallowing, vomiting, and related gastroesophageal pain, and has expressed interest in having his surgery reversed. Brown has also been diagnosed with progressive macular hypomelanosis, a skin condition that causes white spots and itching and irritation, although he does not appear to be as concerned about this issue given that his submissions to date have focused on his GI symptoms.

>>provided meals to ease his gastroesophageal and dermatologic symptoms; and
>
>>(3) disciplining him for eating his state-provided meals too slowly, even though he cannot eat quickly or very much at a time. (Dkt. #21.)

Before the court is Brown's renewed motion for preliminary injunctive relief seeking to compel defendants to provide the items listed in No. 1 above free of charge, to make the accommodations listed in Nos. 2 and 4. (Dkt. #27.)

The court has already declined to order Sand Ridge to provide Brown with the requested items for free. (Dkt. #29 at 3-4.) Still at issue is whether his requested, meal-related accommodations can and should be made now. Although the medical records available to the court did not appear to support injunctive relief, a Zoom hearing was nevertheless scheduled to clarify Brown's concerns and symptoms, as well as assess what preliminary options may be available to address them. Since then, Brown has made two additional written submissions demonstrating both that the hearing is unnecessary, and he is entitled to no further relief. Accordingly, the hearing is cancelled, and his renewed preliminary injunction motion will be denied.

PROCEDURAL HISTORY

Although this case is still in the early stages of discovery, Brown has diligently engaged in motion practice and has filed numerous letters with the court, as well as litigated an interlocutory appeal from the court's *in forma pauperis* order that has since been dismissed for lack of jurisdiction. Relevant here, Brown renewed his motion for injunctive relief after the court denied it without prejudice in its screening order. (Dkt. #21 at 17-18.)

2

In response, the court ordered the state to provide relevant medical records based on Brown's assertions in his renewed motion that he has been suffering from "serious pain" every day since 2017, yet defendants "feel that they do not have to [do] anything about" his health. (Dkt. #27 at 2.) Received on February 26, 2021, those records do not support injunctive relief for the reasons explained in the court's May 6 opinion and order. (Dkt. #48 at 2-12.) Still, the court set the matter for a Zoom hearing in light of Brown's assertions in his May 3 letter that: he "went to the hospital on April 17, 2021," as a result of the medical condition underlying this lawsuit; he was suffering "a medical emergency"; the court needed to act quickly based on the reports from the hospital, which the court did not yet have; and his "health and life is in jeopardy." (Dkt. #47.) More specifically, the court was concerned based on these assertions "that [Brown's] ongoing gastroesophageal condition may now be worsening," either (1) as a result of "defendants' alleged failure to accommodate his condition" or (2) because Brown had not yet had a consultation to explore the possible reversal of his surgery. (Dkt. #48 at 12.) The court also ordered the state to produce any additional medical records of Brown's treatment for his ongoing gastroesophageal pain since their initial February 26, 2021, response, including any available medical records related to Brown's alleged, recent hospitalization. (Dkt. #48.)

The court has since received two more correspondence from Brown. The first, a letter received on May 10 and dated May 5, appears to have been sent before Brown received the court's order setting a Zoom hearing. (Dkt. #49.) In it, Brown provides greater, but materially different details regarding the events in April, as well as attaches relevant records. Brown also complains that he has again been issued conduct reports

3

because of his medical condition. (Dkt. #49 at 2.) However, the attached conduct reports indicate that Brown was twice disciplined in late April because he berated staff when his Ramadan meals were delayed (dkt. #49-3) -- not because he kept food from his trays past meal time due to difficulty finishing, which was the alleged basis for the conduct-report claim on which he was allowed to proceed, or for another medical reason (*see* dkt. #21 at 6, 13-14.) As punishment, Brown asserts that he cannot eat in his room for several weeks, and has one hour to eat each meal, which he asserts makes his condition "worse," although it is unclear how this is specifically affecting him medically. (Dkt. #49 at 2.) Moreover, if Brown wishes to bring a claim based on this latest round of conduct reports, he will need to include the relevant allegations in an amended complaint.

Brown also now explains that (1) he went to a medical center on April 16, 2021, for a previously scheduled modified barium swallow study to investigate why he had allegedly been gagging on liquids and food; and the attached records indicate that the referral for this consultation was made in March 2021 "[t]o establish the safest, least restrictive diet and to determine compensatory strategies to prevent dehydration, malnutrition, and/or pneumonia." (Dkt. #49-2 at 1-2.) At the April 16 appointment, Brown further reported that: food felt like it was stuck in his throat; he would experience a sore throat after eating unless he ate slowly; and he would feel full very quickly; although Brown acknowledged not vomiting for three months and denied suffering any significant weight loss. (Dkt. #49-2 at 2.) Brown also gave a pain rating of "0." (Dkt. #49-2 at 2.) Finally, while the medical provider again recommended that Brown eat smaller, more frequent meals, Brown asserts that defendants are still refusing to make necessary accommodations to allow this, making

his medical condition worse.

Even so, the attached, after-visit summary does not support Brown's assertions that he is suffering a "medical emergency," nor does the medical provider indicate a physical cause for the swallowing difficulties, attributing these difficulties to patient anxiety. (Dkt. #49-2 at 3.)

> Results of the Modified Barium Swallow Study revealed an essentially normal oral pharyngeal swallow. No aspiration or penetration occurred during this evaluation. Piecemeal deglutition occurred with solid consistencies. The cause of piecemeal deglutition is thought to be anxiety prior to the swallow as there is no apparent structural cause. During the evaluation, Mr. Brown did show visible signs of extra effort prior to and during the swallow of solid consistencies. However, there was no evidence of food in the pharynx during that time. The cause of Mr. Brown's globus sensation was unable to be determined. Mr. Brown's history of esophagitis may be contributing to the sensation. Following the Modified Barium Swallow Study, an Esophagram was completed by the radiologist. Per the radiologist, results of the Esophagram were normal. During the Esophagram, a 13 mm barium tablet was presented, which Mr. Brown swallowed without difficulty. The tablet readily passed through the esophagus and into the stomach. Please see the radiologist's report for complete results of the Esophagram.

(*Id*.) Even more to the point, the medical provider does not recommend further diagnostic testing or surgery beyond repeating the swallow study if Brown's symptoms worsen. (*Id.*)

As Brown now stresses, the provider *does* recommend that Brown eat more frequent, smaller meals or snacks to "aid with the feeling of early satiety," and thus, ensure that Brown is eating enough. (Dkt. #49 at 3.)

> Based on the results of this evaluation, it is recommended that Mr. Brown continue to consume a regular-consistency diet with thin liquids. It is recommended that Mr. Brown consume frequent small meals or snacks in order to aid with the feeling

> of early satiety. It is recommended that he continue to follow basic reflux precautions and take reflux medication as prescribed. He was advised to add extra moisture to dry or dense foods in order to aid with motility and globus sensation. Mr. Brown should alternate bites of solid and sips of liquids during meal time to aid with the globus sensation.

(*Id.*)

As for Brown's second letter received on May 14 (dkt. #52), he apparently drafted this second letter without realizing that the court's May 6 order was issued before it had received his first letter on May 10. In it, Brown chastises the court for concluding that he had been hospitalized when he never made such representations in his previous letter. (Dkt. #52 at 1.) Brown further asserts that the "argument before the court is **NOT** the defendants is not giving plaintiff enough time to eat, the argument is each time the defendants write a conduct report for disciplinary action against plaintiff, [w]hich is in State Court under Petition for Writ of Certiorari Review[,] they use his medical condition as a weapon to punish him." (Dkt. #52 at 1.) Finally, Brown complains that the court denied his motion to compel defendants to identify certain Doe defendant special needs committee members, as well as his repeated requests for a lawyer. (Dkt. #52 at 2.)

As of the date of this opinion, defendants have not responded to the court's request for any additional relevant medical records.

OPINION

To begin where Brown has left off, his submissions and diligent motion practice continue to demonstrate that he is more than capable of advocating for himself, and he understands the factual bases for his claims, as well as the applicable legal standard. Accordingly, the court will not reconsider its decision (dkt. #48 at 13-16) to deny Brown's

6

request for help recruiting counsel. *See Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir 2007) (the "question is not whether a lawyer would present the case more effectively than the *pro se* plaintiff" but instead whether the *pro se* litigant can "coherently present [his case] to the judge or jury himself"). As for his motion to compel, Brown appears to be confusing his two, discovery-related motions. The court denied Brown's March 29, 2021, motion to compel and sanction defense counsel (dkt. #39) because defendants' discovery responses were held at the post office due to insufficient postage. (*See* dkt. #47 at 1 n. 1.) Defense counsel explained the error and sent Brown another copy of the discovery responses. (Dkt. #40.)

As for Brown's latest motion to compel (dkt. #42), it was filed on April 12, and is not yet under advisement with the court. Regardless, Brown asks the court to compel defendants to identify certain special needs committee members and to produce certain documents, and objects to several of defendants' responses (dkt. #42 at 1), but the court does not yet have a copy of these responses to review, nor a response brief from defendants, and for good reason, since on April 27, the court granted defendants a 30-day extension to respond to the motion because defense counsel was experiencing a family emergency and had to travel out of state. (Dkt. ##44, 45.) While Brown has repeatedly objected to that extension in his most recent letters (dkt. ##47, 49), to the extent he is concerned about filing an amended complaint identifying his Doe defendants, the court will extend that deadline if necessary, once his motion is ripe.

Finally, the medical records available to the court as well as plaintiff's increasingly unjustified and belligerent tone with the court, do not support his request for preliminary

7

injunctive relief at this time. The court's May 6, 2021, order summarizes Brown's treatment at Sand Ridge through February 2021 (dkt. #48 at 2-13), and the additional records Brown provided from his last outside medical consultation indicate that while Brown has difficulty swallowing and experiences discomfort when he eats, there appears to be no physical cause for these sensations. (Dkt. #49-2.) Nor does Brown continue to report frequent vomiting, constant pain, significant weight loss, or other related declines in overall health. To this point, defendants have twice referred him for outside consultations: with a nurse practitioner in November 2019, and in April 2021 with a speech pathologist. There is currently no recommendation among the records before the court for additional referrals or diagnostic testing, and many of the pathologist's recommendations are within Brown's control, such as avoiding acidic foods, standing up for thirty minutes after eating, taking his reflux medication, adding extra moisture to dry foods, and alternating bites of food with sips of liquid. (Dkt. #49-2 at 3.) It also appears that this visit with a speech pathologist and swallow study is meant to satisfy the nurse practitioner's recommendation that Brown have a surgical consult to explore the possibility of fundoplication reversal. (Dkt. #33-2 at 102-03.)

What apparently remains a primary sticking point for the parties are the size and frequency of Brown's state-provided meals: Brown now receives three meals a day, and has a set amount of time to eat, but would rather receive several, smaller meals a day or snacks, while always being allowed to eat in his room. On one hand, Brown's latest disciplinary issues apparently stem from his own disruptive behavior, not a difficulty eating or swallowing, and he appears to have some control over how often and how much he eats.

For example, he can keep certain food items, such as fruit, from his state-provided trays to eat later, and he purchases additional food items from the canteen. On the other hand, outside medical providers have consistently recommended that he eat smaller, more frequent meals to reduce the risk of regurgitation, ease throat pain, and ensure that he does not feel full too quickly. It remains unclear why defendants cannot make any accommodation in response to this recognized medical recommendation, although likely cost and administrative reasons are involved, but again, there is no indication in the medical records that Brown is malnourished.

Further confusing the record is Brown's latest letter, asserting that the question before the court is *not* the amount of time he has to eat his meals, but rather (1) how often and how much he eats and (2) his latest conduct reports. (Dkt. #52 at 1.) As noted, why defendants cannot provide an additional snack, or smaller, more frequent meals remains a disputed issue of fact, but not one justifying immediate relief on this record. *See Roland Mach. Co. v. Dresser Indus.,* 749 F.2d 380, 389 (7th Cir. 1984) (granting a preliminary injunction is "an exercise of very far-reaching power, never to be indulged except in a case clearly demanding it"). As for Brown's most recent letters, Brown would do better focusing his energy on the discovery process, and clearly and consistently articulating any specific relief he would request under the applicable legal standard, than lambasting the court for confusion some of his own, inaccurate submissions have created.

Accordingly, the court will cancel the Zoom hearing and deny preliminary injunctive relief. Although Brown is undoubtedly experiencing some GI discomfort, there does not appear to a danger of imminent, irreparable harm. *See Lambert v. Buss,* 498 F.3d 446, 451

9

(7th Cir. 2007) (to succeed on a motion for a preliminary injunction, a plaintiff must show, among other requirements, that an irreparable harm will result if the injunction is not granted).

ORDER

IT IS ORDERED that plaintiff's renewed motion for preliminary injunction (dkt. #27) is DENIED.

Entered this 25th day of May, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge