IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LARRY J. BROWN,

                Plaintiff,

v.

DOUG BELLILE, DANIEL KATTENBRAKER,
JOHN AND JANE DOE "SPECIAL NEEDS
COMMITTEE MEMBERS," LAURA THOMAS,
LISA POUILLIE, SARA DONOVAN,
JOSEPH SCHMELZLE, and DANIEL PARK,

                Defendants.

OPINION AND ORDER

20-cv-337-wmc

---

    Pro se plaintiff Larry J. Brown is proceeding under 42 U.S.C. § 1983 against several Sand Ridge Secure Treatment Center staff members on Fourteenth Amendment medical deliberate indifference claims related to an alleged skin condition and to ongoing trouble swallowing and esophageal pain. The court will address two motions in this order. First, the court will deny without prejudice Brown's motion for leave to depose defendants. (Dkt. 61.) Second, the court will grant in part and deny in part Brown's motion objecting to defendants' responses to his request for production of documents and asking for sanctions, and to compel defendants to produce additional information. (Dkt. 42.)

1. **Plaintiff's motion for leave to depose defendants (dkt. 61)**

    Plaintiff asks for leave to depose defendants. Under Federal Rule of Civil Procedure 30(b)(3), depositions must be recorded and the party requesting the deposition must pay for the recording and transcripts. The court does not have funds to pay for pro se litigants to take depositions, and plaintiff has not represented that he is willing or able to pay to

record and obtain transcripts for any of the depositions he wishes to take. Therefore, the court will deny the motion without prejudice to plaintiff's ability to renew it if he (1) is willing to pay the costs associated with taking the depositions he requests, and (2) files an updated trust fund account statement verifying that he has the funds available to pay for the costs associated with these depositions.

2. **Plaintiff's motion to compel and for sanctions (dkt. 42)**

Plaintiff objects to defendants' responses to his first request for document production and seeks sanctions; he also asks the court to compel defendants to produce certain additional information and documents. By way of background, the court allowed plaintiff to proceed against John and Jane Doe Special Needs Committee Members based on his allegations that these defendants refused his repeated requests for medically necessary accommodations despite their knowledge of plaintiff's medical history, and in contravention of the recommendations of University of Wisconsin specialists and a nurse practitioner. (Dkt. 21 at 16-17, 19.) At the preliminary pretrial conference, plaintiff learned how to use discovery requests to identify these defendants, and the court set deadlines for plaintiff to file an amended complaint identifying his Doe defendants and for the any identified Doe defendants to file and serve their answers. (Dkt. 30 at 4-5.)

Plaintiff then sent defendants a request for document production that consisted of five questions. In question no. 1, plaintiff asks for "the names, position, and title" of each committee member who "made medical decisions concerning" plaintiff's complaints of

gastroesophageal pain, besides already-named defendant Dr. Kattenbraker. (Dkt. 56-1 at 2.) In response, defendants name defendants Kattenbraker and Laura Thomas, Director of Nursing. Relatedly, in question no. 2, plaintiff requested "all Statutes, policies and procedure, Wisconsin Administrative Code, DHS laws and procedure or any other law that governs [the committee's] authority" and how it functions and makes decisions. (Dkt. 56-1 at 3.) Defendants' response explains that what plaintiff refers to as a committee is in fact a workgroup designed to address health service requests ("HSR") in the unique environment at Sand Ridge. (Dkt. 56-1 at 3.) Defendants have also produced an internal document describing the group's membership and procedure, and further note that the documents plaintiff requested would not describe the workgroup's functions, given that the workgroup was "not a committee sanctioned by Wisconsin Administrative Code, DHS laws and procedures" or any other laws. (Dkt. 56-1 at 3.)

Plaintiff objects to the sufficiency of these responses. In particular, he seeks to compel defendants to disclose "the names of the Nursing Supervisors, the Pharmacy Supervisor, the Health Information Supervisor, and the Client Rights Facilitators" that, according to the internal document defendants produced, are also members of the medical special needs workgroup. (Dkt. 42 at 1-2.) He further requests all documents related to the workgroup's consideration of his accommodation requests and its "final consensus based decision" on these requests. (Dkt. 42 at 1.)

In response, defendants have supplemented their initial response to plaintiff's discovery request by producing "all workgroup notes and responses related to" plaintiff's

3

HSRs, and assert that these documents represent everything available concerning these requests. (Dkt. 56 at 4.) The workgroup notes document the workgroup meetings held between August 2019 and April 2021. Although redacted in part, they indicate which of plaintiff's health service requests were considered and the dates of consideration, as well as the reasoning behind the decisions to approve or deny them. (Dkt. 56-2.) Moreover, these notes also indicate that Kattenbraker and Thomas are the only two workgroup members who reviewed and considered plaintiff's HSRs. (Dkt. 56-2 at 2, 5, 8, 13, 15, 17, 19, 22.)

Although other individuals may have been members of the workgroup during this period and may have been involved in decisions regarding other patients, the meeting notes do not indicate that anyone else had input on the decisions plaintiff challenges here. Therefore, it appears that there are no other individuals to identify and include in this lawsuit based on workgroup involvement. *See Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010) ("individual liability under § 1983 requires personal involvement in the alleged constitutional violation") (citation omitted). Plaintiff did not file a reply, nor did he otherwise indicate to the court that the notes defendants have produced are insufficiently responsive to his discovery request. In any event, the court has no reason to doubt defendants' assertion that they have produced all they have with respect to workgroup documentation concerning plaintiff's HSRs. Accordingly, the court will substitute the already-named Kattenbraker and Thomas for the John and Jane Doe committee member defendants. These defendants are already represented by the Wisconsin Attorney General's office, which may have two weeks to file an amended answer.

Plaintiff further objects to defendants' response to his question no. 5, asking for "all Health Services medical policies that allows security staff to punish a patient (plaintiff) with segregation for not complying with a rule, based on a medical condition." (Dkt. 56-1 at 7.) I infer that plaintiff seeks information relevant to the October 2019 incident in which plaintiff allegedly was disciplined for not being able to finish eating breakfast by the end of mealtime. (Dkt. 21 at 13-15.) Defendants respond that the health services unit does not maintain any "internal medical policies, processes, or procedure documents" concerning how to punish a patient. (Dkt. 56-1 at 8.) Even so, patient discipline or security policies or procedures, or other documents, related to the decision to sanction plaintiff in October 2019 would be relevant to his claim arising out of that decision and thus discoverable. To the extent such documentation has not been produced, the court will allow defendants one week to do so.

Plaintiff's remaining objections are argumentative and will be overruled. To start, plaintiff complains that the workgroup is an unsanctioned committee making "life and death decisions" whose members "answer only to themselves." (Dkt. 42 at 2.) To the extent plaintiff is claiming that the workgroup violates a policy or state law, that would not give rise to a federal constitutional claim. *Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir. 2019) ("constitutional suit is not a way to enforce state law through the back door"); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or. . . departmental regulations").

Moreover, plaintiff is not proceeding on a claim challenging the existence of the workgroup, and workgroup members are not beyond reach or reproach. For one, plaintiff is proceeding in this court against the two members who allegedly were involved in the decisions denying him the requested accommodations. For another, as defendants note in their response to plaintiff's discovery request no. 3 asking how patients can appeal workgroup decisions, Sand Ridge patients can file a grievance with the Client Rights Facilitator. (Dkt. 56-1 at 6.) In support, defendants have produced Sand Ridge's patient handbook outlining the grievance process and referencing policy SR425 concerning patient grievances. (Dkt. 56-1 at 22.)

Plaintiff objects, but solely based on his speculation that filing a grievance against the workgroup would be futile because the workgroup includes a facilitator. Again, no facilitator appears to have been involved in the workgroup decisions concerning his requests. In any event, plaintiff's skepticism regarding the fairness of the grievance process does not mean that defendants were unresponsive to his discovery request asking them to describe and document that process, which they have done.

Next, plaintiff objects to defendants' general statement in response to his question no. 2 in which they state that "all of the patients at [Sand Ridge] suffer from serious psychiatric illness and/or mood disorders," and the workgroup was designed to safely address patient health care concerns in this environment while avoiding the "fracturing of the physician-patient relationship" at the facility. (Dkt. 56-1 at 4.) Plaintiff asks for sanctions and the statement's redaction because he claims the statement is untrue, offensive, and

6

speculative, and therefore cannot serve as a reason why the workgroup operates as it does. (Dkt. 42 at 2.) Plaintiff, however, is proceeding only on behalf of himself, not all Sand Ridge patients, and unlike defendants, is not in a position to speak to how many patients there have been diagnosed with mental illness or to the general safety concerns with which health care staff contend. Moreover, defendants have made no specific statement regarding any particular patient or their mental health history. Finally, plaintiff has already disclosed his own diagnoses in this case, including antisocial personality disorder. (Dkt. 35 at 1, 36 at 4.) Accordingly, the court will neither redact this general statement nor sanction defense counsel or defendants for making it.

Plaintiff's remaining objections do not merit much discussion. Specifically, plaintiff: (1) takes issue with defendants' characterization of the complaint as concerning the number of meals plaintiff is willing to eat per day rather than the denial of accommodations; (2) and with defendants' statement that his requested nighttime snack bag is not medically indicated; (3) he argues that medical staff should have intervened and halted the October 2019 conduct hearing; and (4) he restates his position that he should not have to pay for the accommodations he is requesting. (Dkt. 42 at 3-4.) These arguments and assertions are best reserved for plaintiff's opposition to defendants' anticipated motion for summary judgment and proposed findings of fact. The court will not resolve these disputes without the parties having had the opportunity to marshal their evidence in support of their respective versions of events. Accordingly, plaintiff's discovery motion will be granted in part and denied in part, as specified above.

ORDER

IT IS ORDERED THAT:

1. Plaintiff Larry J. Brown's motion for leave to depose defendants (dkt. 61) is DENIED as moot.

2. Plaintiff's motion to compel and for sanctions (dkt. 42) is GRANTED in part and DENIED in part as specified above. Defendants have until **October 22, 2021** to produce any previously undisclosed documents, policies or procedures related to the October 2019 discipline incident as alleged in plaintiff's complaint.

3. Defendants Kattenbraker and Thomas are substituted for the John and Jane Doe Committee Members. The Attorney General's office may file an amended answer within two weeks of the date of this order.

Entered this 14th day of October, 2021.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge